THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

<table>
<tr><td>

**BTL INDUSTRIES, INC.**,

               Plaintiff,

v.

**ADVANCED MEDICAL INC.,
GEOFFREY LOVELESS, and KAREN E.
LOVELESS**,

               Defendants.

</td><td>

**Civil Action No. 1:25-cv-00907**

**DEMAND FOR JURY TRIAL**

</td></tr>
</table>

## COMPLAINT

Plaintiff BTL Industries, Inc. ("**Plaintiff**" or "**BTL**"), by its attorneys, for its Complaint against Advanced Medical Incorporated ("**AMI**"), Geoffrey Loveless, and Karen E. Loveless (collectively, "**Defendants**"), alleges as follows:

### NATURE OF THIS ACTION

1.     This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. § 1 *et seq.*; Defendants' trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); Defendants' trademark infringement and unfair competition under the Texas Deceptive Trade Practices Act, Texas Business & Commercial Code §§ 17.46, 17.50, and the common law of the State of Texas.

2.     BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug

Administration (FDA). BTL and its affiliates protected the EMSCULPT® device—and the technology used in the device—with numerous patents and federally registered trademarks and copyrights.

3.      Defendants promote and sell devices and services in the United States using certain non-invasive body contouring devices that Defendants' call "Renu Sculpt Plus" and "Em-Con Body Shaping." On information and belief, Defendants have and continue to infringe BTL's patents directed to body-contouring methods and devices by offering, selling, and performing body-contouring services using these devices. On information and belief, Defendants advertise these body-contouring services by improperly using BTL's trademarks, and confusingly similar variations of these trademarks, in their promotional and informational materials for these body-contouring services.

4.      Defendants' infringing and fraudulent conduct not only irreparably harms BTL and the goodwill associated with its brand but may also pose potentially serious health and safety consequences to the public, as, on information and belief, Defendants' devices are not FDA cleared. Defendants' use of the EMSCULPT® and HIFEM®, and the confusingly similar EM-CON marks, mislead consumers into believing that Defendants' devices and body-contouring services are associated and/or otherwise affiliated with BTL.

5.      BTL is thus forced to file this action to combat Defendants' unauthorized use of its patents and federally registered trademarks, as well as to protect unknowing consumers from purchasing body-contouring services performed by devices that are not FDA-cleared.

6.      Defendants' willful and continuing trademark infringement, unfair competition, and patent infringement should be enjoined permanently to curb the harm to BTL's reputation and

the relevant segment of the public at large. BTL has been, and continues to be, irreparably damaged as a result of Defendants' willful actions and seeks injunctive and monetary relief.

**PARTIES**

7.    BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

8.    On information and belief, AMI is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 14001 Shadow Glen Blvd., Suite G1, Manor, Texas 78653. Additionally, the Texas Secretary of State Business Organizations Inquiry for Advanced Medical Incorporated lists AMI's address as 17107 Albert Voelker Road, Elgin, TX 78621. On information and belief, the address at 17107 Albert Voelker Road is a residential address belonging to AMI's owners, Geoffrey Loveless and Karen E. Loveless. *See* https://www.amilasers.com/ (describing AMI as a "Family-owned and Operated Enterprise" and "a family business you can trust").

9.    On information and belief, Geoffrey Loveless is an individual and registered agent, director, and owner of AMI who resides in this District.

10.    On information and belief, Karen E. Loveless is an individual and director and owner of AMI who resides in this District.

**JURISDICTION AND VENUE**

11.    This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)–(b).

12.    Subject-matter jurisdiction for the trademark and unfair competition claims exists with respect to the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338.

13.    This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

14.    This Court has personal jurisdiction over AMI because, on information and belief, it is a Texas limited liability company and has its principal place of business in this District.

15.    This Court has personal jurisdiction over Defendant Geoffrey Loveless because, on information and belief, Mr. Loveless is an owner and a moving, conscious force behind Defendant AMI's actions, and is a resident of this District.

16.    This Court has personal jurisdiction over Defendant Karen E. Loveless because, on information and belief, Ms. Loveless is an owner and a moving, conscious force behind Defendant AMI's actions, and is a resident of this District.

17.    This Court has supplemental jurisdiction over BTL's claims arising under the laws of Texas, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

18.    Further, the acts complained of herein occurred in Texas.

19.    Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

(a)    Defendants have purposefully established "minimum contacts" with the State of Texas and this District; and

(b)    the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

20.    Therefore, this Court has specific and general jurisdiction over Defendants.

21.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of and have their principal place of business in this District and are subject to personal jurisdiction in this District.

## BACKGROUND

22.     BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

23.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared, body-contouring device. *See* **Exhibit A** (BTL Press Release). BTL's patent-protected EMSCULPT® device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT® applicators, tailoring each type of applicator to a specific target area.



24.    The EMSCULPT® device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. *See* https://bodybybtl.com/solutions/emsculpt-neo/.

25.    In June 2018, BTL received clearance from the FDA for its EMSCULPT® device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, and for strengthening, toning, and firming of the buttocks and thighs. *See Id.* In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for

the EMSCULPT® device with both large and small applicators for the improvement of abdominal tone, strengthening of the abdominal muscles, development of a firmer abdomen, strengthening, toning, and firming of the buttocks, thighs, and calves, as well as improvement of muscle tone and firmness for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

26.    BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT® device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT® devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

27.    BTL's EMSCULPT® device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

28.    The aesthetic industry has recognized BTL's innovation, hailing it has having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." **Exhibit A**.

29.    BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents and trademarks. BTL lists the patents that cover its products, including EMSCULPT®, on its website at www.btlnet.com/patents.

A.    **The Asserted Patents**

30.    On November 19, 2019, the United States Patent and Trademark Office ("**USPTO**") duly and lawfully issued U.S. Patent No. 10,478,634 (the "**'634 Patent**"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 Patent is attached hereto as **Exhibit B**. The '634 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 Patent, including equitable relief and damages.

31.    On May 2, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,636,519 (the "**'519 Patent**"), entitled "Magnetic Stimulation Methods and Devices for Therapeutic Treatments" to BTL Holdings Limited. A true and correct copy of the '519 Patent is attached hereto as **Exhibit C**. The '519 Patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '519 Patent, including equitable relief and damages.

B.    **BTL's Trademarks**

32.    BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States including the following federally registered marks (the "BTL Trademarks"):

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal energy for use in skin |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | June 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |
| 5,915,636 | **EM** | Nov. 19, 2019 | Jan. 8, 2019 | Class 10: Physical therapy devices for treating muscle spasms and pain management; |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,206,098 | **EM** | Nov. 24, 2020 | July 2018 | Class 10: Physical therapy devices for treating muscle spasms and pain management; medical apparatus and instruments, in particular apparatus and instruments for the treatment of cellulite, apparatus and instruments for body toning and body shaping, and apparatus and instruments |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | for the removal of fat, circumference reduction; medical devices for use in treating gynecological disorders, pelvic area disorders, bladder disorders and incontinence.<br><br>Class 44: Health assessment services; medical services, namely, providing treatment for patients with gynecological disorders, pelvic area disorders, bladder disorders and incontinence; gynecological services; urology medical care services; rental of medical apparatus and equipment; cosmetic and plastic surgery; beauty salon services; liposuction and surgical body shaping services; medical services, namely, removal of body cellulite; physical therapy services. |
| 6,373,947 | **EMSCULPT NEO** | June 1, 2021 | Oct. 17, 2020 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating |

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment of sexual dysfunction, gynecological treatment and pelvic floor treatment. Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical services, namely, removal of body cellulite. |
| 4,750,101[1] | | June 9, 2015 | Jan. 24, 2014 | Class 10: Physiotherapy apparatus in the nature of apparatus for electrotherapy, laser therapy, ultrasound therapy, magnetotherapy, and shockwave therapy, all for electrical nerve and muscle stimulation, infrared heat, wound healing, pain therapy, and treatment of inflammation; body rehabilitation apparatus for medical purposes; esthetic massage apparatus; hydrotherapy massage apparatus; medical and veterinary diagnostic apparatus and instruments, namely, electrocardiographs, heart |

---

[1] This registration hereinafter referred to as the "BTL Logo."

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| | | | | monitors, spirometers, and blood pressure monitors; Medical devices for nonsurgical cosmetic treatments; medical devices for body toning and body shaping, tightening of skin, treatment of skin laxity, wrinkles, rhytides, and cellulite, and fat removal; lymphatic drainage equipment, namely, massage apparatus and lasers for medical use |

33.     BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct "status" copies of the BTL Trademark registrations, obtained from the Trademark Status Document Retrieval ("**TSDR**") database of the USPTO, are attached to this Complaint as **Exhibit D**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and of BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

34.     The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth

promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promotion, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

### C.    <u>Defendants' Unlawful Conduct</u>

35.    On information and belief, Defendants have since at least January 6, 2023, advertised body-contouring devices, such as the "Renu Sculpt Plus" and "EM-Con Body Shaping" body-contouring devices (the "Accused Devices") using the marks EMSCULPT, HIFEM, and EM-CON.    *See*    https://www.amilasers.com/listings/6555733-renu-sculpt-plus, https://www.amilasers.com/listings/7406313-em-con-body-shaping,    and https://www.instagram.com/p/CtHdI-UriIv/.

36.    On information and belief, Defendants' activities are ongoing, despite attorneys for BTL informing Defendants that their activities violate BTL's rights on multiple occasions. On May 7, 2025, attorneys for BTL sent Defendants a letter via email (to sales@amilasers.com – the email listed on AMI's website) and FedEx informing Defendants of their infringing conduct and BTL's intellectual property rights. FedEx provided proof of delivery to both AMI (14001 Shadow Glen Blvd., Suite G1, Manor, Texas 78653) and Mr. Loveless (910 Lee Dildy Blvd., #121, Elgin, Texas 78621) on May 8, 2025. On May 16, 2025, attorneys for BTL sent a follow-up letter via email. *See* **Exhibit E** (Letters and Emails). To this day Defendants have not responded to any of BTL's letters or emails.

37.    On information and belief, the Accused Devices implement the same or substantially the same technology as the '634 Patent.

38.    On information and belief, the Accused Devices implement the same or substantially the same technology as the '519 Patent.

39.    On information and belief, the Accused Devices include or perform each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. By offering services using, making, offering to sell, selling, and/or importing into the United States the Accused Devices, Defendants have directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

40.    On information and belief, Defendants have been aware of the Asserted Patents since at least May 7, 2025, when BTL informed Defendants via email of their infringement of BTL's intellectual property. Additionally, BTL's "Patent Labeling" webpage (https://www.btlnet.com/patents) also lists the Asserted Patents and identifies it as covering the EMSCULPT® device.

41.    On information and belief, Defendants actively encourage, promote, distribute, sell, provide instruction for, and support the use of the Accused Devices by their customers in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers will commit acts in such a manner as to directly infringe the Asserted Patents.

42.    Defendants have used and continue to use the BTL Trademarks, and confusingly similar variations of the BTL Trademarks, in their informational and promotional materials for their body-contouring services using the Accused Devices.

43.    Specifically, the images below are representative of Defendants' infringing conduct:



**Renu Sculpt Plus – Triple Therapy in a Single Treatment**

Renu Sculpt Plus builds upon the success of its predecessor, Emsculpt, by combining **Radio Frequency (RF) and High-Intensity Electromagnetic (HIFEM) Energies** for **maximum fat reduction and muscle growth** in less time and at a lower cost.

**Key Benefits:**
- **30% Fat Reduction** – HI-FEM technology integrates **Micro EMS + Bipolar RF**, delivering high-frequency contraction signals that **permanently destroy fat cells**, naturally eliminating them from the body.
- **25% Muscle Gain** – HIFEM + EMS + RF technology contracts muscle fibers at an intensity that **boosts blood circulation**, increases muscle fiber growth, and **enhances muscle definition**.
- **Efficient & Time-Saving** – Just **4 sessions** deliver results **equivalent to 12-16 weeks of exercise.**
- **Comfortable Treatment** – Radiofrequency heating maintains **optimal warmth and comfort** while sculpting a toned, contoured body.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

17



**RENU SCULPT PORTABLE Body Contouring with EM-Con**

**EM-Con** is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime. Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.

**Key Benefits:**

- **Tones and strengthens muscles** in areas like the **abdomen, buttocks, arms, calves, and thighs**
- **Reduces stubborn fat** for a leaner, more sculpted appearance
- One 30-minute session delivers the equivalent of **20,000 crunches or squats**
- Completely **non-invasive** with **no recovery time**
- Clinically tested and FDA-cleared

**Specifications:**

- **Display:** 15" sliding touchscreen
- **Pulse Frequency:** 1–150 Hz
- **Energy Range:** 0–100%
- **Pulse Width:** 285 µs
- **Magnetic Intensity:** 0.4–2.5 Tesla
- **Treatment Duration:** Up to 60 minutes
- **Net Weight:** 31 kg

Whether you're looking to **tighten your core**, **lift your glutes**, or **enhance muscle definition.**

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping; accessed June 3, 2025)

18

44.    On information and belief, Mr. Loveless and Ms. Loveless are the moving, conscious, and active forces behind AMI's infringing conduct. For example, on information and belief, Mr. Loveless is the registered agent, owner, and director of AMI, and Ms. Loveless is an owner and director of AMI. *See* https://www.instagram.com/advancedmedicalinc/ (listing Geoffrey Loveless). Additionally, the Texas Secretary of State lists Mr. Loveless as the Registered Agent and Ms. Loveless as the Director of AMI. A true and correct copy of the Texas Secretary of State Business Organizations Inquiry for Advanced Medical Incorporated is attached hereto as **Exhibit F**.

45.    On information and belief, Mr. Loveless and Ms. Loveless are the owners and directors of AMI and have been the individuals possessing sole decision-making authority over the content of AMI's technical, information, and promotional materials for the Accused Devices.

46.    On information and belief, Mr. Loveless and Ms. Loveless have and continue to willfully and maliciously serve as the moving, conscious, and active force behind AMI's infringing conduct—not least because Mr. Loveless and Ms. Loveless have had constructive knowledge of BTL's intellectual property at least since May 7, 2025, when counsel for BTL informed Defendants via email of their potential infringement of BTL's intellectual property.

47.    Mr. Loveless and Ms. Loveless, as the authorized members of AMI, are and have been the individuals possessing decision-making authority to enter into wholesale purchase agreements on behalf of AMI. Thus, on information and belief, Mr. Loveless and Ms. Loveless have and continue to, on AMI's behalf, enter into wholesale purchase agreements with third parties for the importation of the Accused Devices into the United States.

48.    Defendants' use of EMSCULPT, HIFEM, and EM-CON is without BTL's authorization.

49.    Defendants' advertising includes the claims that the Accused Devices can result in a "25% Muscle Gain" and "30% Fat Reduction." On information and belief, Defendants have not performed clinical studies demonstrating these results nor have any clinical studies by any other entity using the Accused Devices been performed. Rather, these clinical study results are taken from BTL's own clinical studies using its EMSCULPT® and EMSCULPT NEO® devices.

50.    On information and belief, the Accused Devices are not authentic BTL devices.

51.    On information and belief, Defendants' Accused Devices use time-varying magnetic fields that are applied to a patient's skin and held there using a flexible belt attached to an applicator that includes a magnetic field generating coil. On information and belief, the magnetic field generating coil generates a time-varying magnetic field and the device applies a magnetic flux of 50 T cm$^2$ to 1,500 T cm$^2$ and causes muscle contractions.

52.    On information and belief, Defendants' Accused Devices use time-varying magnetic fields for the treatment of a patient. On information and belief, the devices include a connection to an energy source, a switch, a coil, an energy storage device, a casing, and at least one blower. On information and belief, at least one blower is mounted around the circumference of the coil so that air is forced through a flow channel defined between the coil and the interior surface of the casing. This arrangement allows fluid (e.g., air) to pass over both the upper and lower faces of the coil, thereby cooling the coil while the magnetic field is being pulsed.

53.    On information and belief, the Accused Devices are not FDA-approved.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

54.    BTL repeats and re-alleges paragraphs 1–53 as if fully set forth herein.

55.    The '634 Patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the '634 Patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

56.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States.

57.     Defendants have and continue to promote and perform the preamble of claim 1 of the '634 Patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields." Advertising and promotional information for the Accused Devices indicates that the body-contouring services performed by the Accused Devices tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshot taken from Defendants' "Renu Sculpt Plus" webpage, the "Renu Sculpt Plus" device (on information and belief, one of the Accused Devices) offers "maximum fat reduction and muscle growth." On information and belief, this language indicates that the Accused Devices tone a patient's muscles.

> Renu Sculpt Plus builds upon the success of its predecessor, Emsculpt, by combining **Radio Frequency (RF) and High-Intensity Electromagnetic (HIFEM) Energies** for **maximum fat reduction and muscle growth** in less time and at a lower cost.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

Additionally, Defendants' website states that the "Renu Sculpt Plus" "maintains optimal warmth and comfort while sculpting a toned, contoured body." Furthermore, the "Key Benefits" of the "Renu Sculpt Plus" are a "30% Fat Reduction" and "25% Muscle Gain."

**Key Benefits:**
- **30% Fat Reduction** – HI-FEM technology integrates **Micro EMS + Bipolar RF**, delivering high-frequency contraction signals that **permanently destroy fat cells**, naturally eliminating them from the body.
- **25% Muscle Gain** – HIFEM + EMS + RF technology contracts muscle fibers at an intensity that **boosts blood circulation**, increases muscle fiber growth, and **enhances muscle definition**.
- **Efficient & Time-Saving** – Just **4 sessions** deliver results **equivalent to 12-16 weeks of exercise**.
- **Comfortable Treatment** – Radiofrequency heating maintains **optimal warmth and comfort** while sculpting a toned, contoured body.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

On Defendants' "RENU SCULPT Portable EM-Con Body Shaping" webpage, Defendants describe the Key Benefits of the Accused Device as "Ton[ing] and strengthen[ing] muscles in areas like the abdomen, buttocks, arms, calves, and thighs," and "Reduc[ing] stubborn fat for a leaner, more sculpted appearance."

**RENU SCULPT PORTABLE Body Contouring with EM-Con**

EM-Con is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime.
Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.

**Key Benefits:**

- **Tones and strengthens muscles** in areas like the **abdomen, buttocks, arms, calves, and thighs**
- **Reduces stubborn fat** for a leaner, more sculpted appearance
- One 30-minute session delivers the equivalent of **20,000 crunches or squats**
- Completely **non-invasive** with **no recovery time**
- Clinically tested and FDA-cleared

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping; accessed June 3, 2025)

Furthermore, the language used indicates that the body-contouring services performed by the Accused Devices use magnetic fields. For example, the following screenshots taken from the "Renu Sculpt Plus" and "RENU SCULPT Portable EM-Con Body Shaping" webpages state that the Accused Devices use "High-Intensity Electromagnetic (HIFEM) Energies for maximum fat reduction and muscle growth" and "high-intensity focused electromagnetic (HIFEM) technology" that "builds muscle and burns fat simultaneously." On information and belief, this language indicates that the Accused Devices uses magnetic field to tone a patient's muscles.

**Renu Sculpt Plus – Triple Therapy in a Single Treatment**

Renu Sculpt Plus builds upon the success of its predecessor, Emsculpt, by combining **Radio Frequency (RF) and High-Intensity Electromagnetic (HIFEM) Energies** for **maximum fat reduction and muscle growth** in less time and at a lower cost.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

**RENU SCULPT PORTABLE Body Contouring with EM-Con**

**EM-Con** is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime.
Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping; accessed June 3, 2025)

On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices' magnetic fields are time-varying.

58.    Defendants have and continue to promote and perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock." On information and belief, the Accused Devices includes at least one applicator comprising a magnetic field generating coil. On information and belief, Defendants place these applicators on the skin of a patient's abdomen or buttocks or over clothing covering these body regions. For example, advertising and promotional materials depict the Accused Devices' applicators attached to the skin of patients at various body regions including the abdomen or buttock.





(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

**Tones and strengthens muscles** in areas like the **abdomen, buttocks, arms, calves, and thighs**



(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping; accessed June 3, 2025)



(https://www.instagram.com/p/CtHdI-UriIv/; accessed June 3, 2025)

On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices' applicators contain magnetic field generating coils.

59.    Defendants have and continue to promote and perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." For example, advertising and promotional materials depict the Accused Devices' applicators attached to the skin of patients using an adjustable flexible belt at various body regions including the abdomen or buttock.



([https://www.amilasers.com/listings/6555733-renu-sculpt-plus](https://www.amilasers.com/listings/6555733-renu-sculpt-plus); accessed June 3, 2025)



(https://www.instagram.com/p/CtHdI-UriIv/; accessed June 3, 2025)

60. Defendants have and continue to promote and perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field." On information and belief, a reasonable opportunity for further investigation and discovery will show that the method of operation of the Accused Devices includes providing a power supply which transmits energy to the applicators, via an energy source and energy storage device, which in turn generates time-varying magnetic fields. On information and belief, the Accused Devices include a power supply which transmits energy to the applicators, which in turn generate time-varying magnetic fields.

61. Defendants have and continue to promote and perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices' magnetic field generating coils are configured to generate a time-varying magnetic field with a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the magnetic field

generating coils and are of an area sufficient to result in a magnetic fluence in the range of 50 T cm$^2$ to 1,500 T cm$^2$.

62.    Defendants have and continue to promote and perform the claimed step "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region." For example, advertising and promotional materials for the Accused Devices promote and advertise the Accused Devices ability to generate magnetic fields sufficient to cause muscle contractions in the targeted body region.

> - **30% Fat Reduction** – HI-FEM technology integrates **Micro EMS + Bipolar RF**, delivering high-frequency contraction signals that **permanently destroy fat cells**, naturally eliminating them from the body.
> - **25% Muscle Gain** – HIFEM + EMS + RF technology contracts muscle fibers at an intensity that **boosts blood circulation**, increases muscle fiber growth, and **enhances muscle definition**.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

> **EM-Con** is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime.
> Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.
>
> **Key Benefits:**
> - **Tones and strengthens muscles** in areas like the **abdomen, buttocks, arms, calves, and thighs**
> - **Reduces stubborn fat** for a leaner, more sculpted appearance
> - One 30-minute session delivers the equivalent of **20,000 crunches or squats**

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping; accessed June 3, 2025)

63.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '634 Patent by making, using, offering to

sell, or importing at least the Accused Devices in the United States. On information and belief, Defendants were aware of the '634 Patent since before the filing of this Complaint. On information and belief, Defendants have known that the Accused Devices are designed for a use that infringes one or more claims of the '634 Patent, and the Accused Devices lack a substantial non-infringing use. On information and belief, Defendants have, and will continue to, intentionally directly infringe with knowledge of the '634 Patent and knowledge that their acts are directly infringing.

64.    Defendants' direct infringement of the '634 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '634 Patent before the filing of this Complaint and have infringed the '634 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

65.    Defendants' direct infringement of the '634 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

66.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 Patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,636,519

67.    BTL repeats and re-alleges paragraphs 1–53 as if fully set forth herein.

68.    The '519 Patent is directed towards a magnetic stimulation device for producing a time varying magnetic field for treatment. Exemplary claim 1 of the '519 Patent recites:

A magnetic stimulation device producing a time varying magnetic field for treatment, comprising;

a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a case;

with the blower arranged on a circumference of the coil; and

wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil.

69.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, at least claim 1 of the '519 Patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States.

70.    On information and belief, Defendants have and continue to promote and perform the preamble of claim 1 of the '519 Patent, which recites "[a] magnetic stimulation device producing a time varying magnetic field for treatment, comprising." Advertising and promotional information for the Accused Devices indicates that the Accused Devices tone a patient's muscles using time-varying magnetic fields. For example, in the below screenshot taken from Defendants' "Renu Sculpt Plus" webpage, the "Renu Sculpt Plus" device (on information and belief, one of the Accused Devices) offers "maximum fat reduction and muscle growth." On information and belief, this language indicates that the Accused Devices tone a patient's muscles.

> Renu Sculpt Plus builds upon the success of its predecessor, Emsculpt, by combining **Radio Frequency (RF) and High-Intensity Electromagnetic (HIFEM) Energies** for **maximum fat reduction and muscle growth** in less time and at a lower cost.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025) Additionally, Defendants' website states that the "Renu Sculpt Plus" "maintains optimal warmth and comfort while sculpting a toned, contoured body." Furthermore, the "Key Benefits" of the "Renu Sculpt Plus" are a "30% Fat Reduction" and "25% Muscle Gain."

**Key Benefits:**
- **30% Fat Reduction** – HI-FEM technology integrates **Micro EMS + Bipolar RF**, delivering high-frequency contraction signals that **permanently destroy fat cells**, naturally eliminating them from the body.
- **25% Muscle Gain** – HIFEM + EMS + RF technology contracts muscle fibers at an intensity that **boosts blood circulation**, increases muscle fiber growth, and **enhances muscle definition.**
- **Efficient & Time-Saving** – Just **4 sessions** deliver results **equivalent to 12-16 weeks of exercise.**
- **Comfortable Treatment** – Radiofrequency heating maintains **optimal warmth and comfort** while sculpting a toned, contoured body.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

On Defendants' "RENU SCULPT Portable EM-Con Body Shaping" webpage, Defendants describe the Key Benefits of the Accused Device as "Ton[ing] and strengthen[ing] muscles in areas like the abdomen, buttocks, arms, calves, and thighs," and "Reduc[ing] stubborn fat for a leaner, more sculpted appearance."

**RENU SCULPT PORTABLE Body Contouring with EM-Con**

**EM-Con** is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime.
Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.

**Key Benefits:**
- **Tones and strengthens muscles** in areas like the **abdomen, buttocks, arms, calves, and thighs**
- **Reduces stubborn fat** for a leaner, more sculpted appearance
- One 30-minute session delivers the equivalent of **20,000 crunches or squats**
- Completely **non-invasive** with **no recovery time**
- Clinically tested and FDA-cleared

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping;

accessed June 3, 2025)

Furthermore, the language used indicates that the Accused Devices use magnetic fields. For example, the following screenshots taken from the "Renu Sculpt Plus" and "RENU SCULPT

32

Portable EM-Con Body Shaping" webpages state that the Accused Devices use "High-Intensity Electromagnetic (HIFEM) Energies for maximum fat reduction and muscle growth" and "high-intensity focused electromagnetic (HIFEM) technology" that "builds muscle and burns fat simultaneously." On information and belief, this language indicates that the Accused Devices uses magnetic field to tone a patient's muscles.

**Renu Sculpt Plus – Triple Therapy in a Single Treatment**

Renu Sculpt Plus builds upon the success of its predecessor, Emsculpt, by combining **Radio Frequency (RF) and High-Intensity Electromagnetic (HIFEM) Energies** for **maximum fat reduction and muscle growth** in less time and at a lower cost.

(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 3, 2025)

**RENU SCULPT PORTABLE Body Contouring with EM-Con**

**EM-Con** is a revolutionary non-invasive body contouring treatment that **builds muscle and burns fat simultaneously**—all without surgery or downtime. Using **high-intensity focused electromagnetic (HIFEM) technology**, EMSculpt induces powerful muscle contractions—called **supramaximal contractions**—that go far beyond what's possible through exercise alone.

(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping;

accessed June 3, 2025)

On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices' magnetic fields are time-varying.

71.    On information and belief, the Accused Devices include the claimed element "a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a casing." As can be seen in the following screenshot taken from Defendants' website, the Accused Devices feature a connection to an energy source, as demonstrated by the Accused Devices' illuminated screens and use of "HIFEM" energy/technology. Additionally, the Accused Devices

feature a casing—the exterior of the applicator(s) which houses the internal mechanisms—and the holes around the applicator(s), indicate the presence of at least one blower as the holes allow the air to circulate. On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices also feature a coil, an energy storage device, and a switch.







(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 11, 2025)





(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping;

accessed June 11, 2025)

72.    On information and belief, the Accused Devices include the claimed element "with the blower arranged on a circumference of the coil." On information and belief, a reasonable opportunity for further investigation or discovery will show that the device includes a blower arranged on a circumference of a coil.

73.    On information and belief, the Accused Devices include the claimed element "wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil." As described above, the holes around the applicator(s) of the device indicate that a fluid (e.g., air) is being used to cool coils, which on information and belief, reside within the casing. On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices include a coil(s) arranged in a manner that fluid (e.g., air) can flow in-between the coil(s), which are cooled by the fluid flow over at least the upper and lower sides of the coil(s).





(https://www.amilasers.com/listings/6555733-renu-sculpt-plus; accessed June 11, 2025)



(https://www.amilasers.com/listings/7406313-renu-sculpt-portable-em-con-body-shaping;

accessed June 11, 2025)

74.    Defendants' direct infringement of the '519 Patent has been, and continues to be, willful. On information and belief, Defendants have been aware of the '519 Patent before the filing of this Complaint and have infringed the '519 Patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

75.    Defendants' direct infringement of the '519 Patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

76.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '255 Patent.

## COUNT III: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

77.    BTL repeats and realleges paragraphs 1–53 as if fully set forth herein.

78.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

79.    Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations thereof in connection with the advertising, promotion, sale, and offer for sale of body contouring services using the Accused Devices.

80.    On information and belief, Defendants' unauthorized use of the EMSCULPT® and HIFEM® trademarks to advertise and promote body contouring services using the Accused Devices, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Devices and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Devices and body-contouring services.

81.    On information and belief, Defendants' unauthorized use of the EM-CON mark—which is a confusingly similar variation of BTL's EM® federally registered trademark—to advertise and promote body-contouring services using the Accused Devices, has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Devices and services; their affiliation, connection, or association with BTL; and the sponsorship or approval by BTL of the Accused Devices and body-contouring services

82.    Defendants have had knowledge of BTL's rights in the BTL Trademarks since before the filing of this Complaint. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in each of the EMSCULPT® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the EMSCULPT NEO® trademark since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072,

Defendants have had constructive knowledge of BTL's rights in each of the EM® trademarks since at least the dates the registration for each of these trademarks first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the BTL Logo since at least the date the registration for this trademark first issued to BTL. Under 15 U.S.C. § 1072, Defendants have had constructive knowledge of BTL's rights in the HIFEM® trademark since at least March 5, 2019—the date the registration for the HIFEM® trademark first issued to BTL. Moreover, a straightforward Google search for "BTL" and "trademarks" lists the BTL Trademarks as associated with BTL. https://www.trademarkia.com/company-btl-industries-inc-3618568-page-2-2.

83.     Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of their infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

84.     BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

## COUNT IV: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

85.     BTL repeats and re-alleges paragraphs 1–53 as if fully set forth herein.

86.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Devices has and is likely to confuse, mislead, or deceive as to the origin and quality of these body-contouring services and the Accused Devices, their association with

BTL and BTL's EMSCULPT® and EMSCULPT NEO® devices, and the sponsorship or approval by BTL of these body-contouring services and the Accused Devices.

87.     Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and confusingly similar variations thereof to promote, market, offer for sale, and sell body-contouring services using the Accused Devices misrepresents the nature, characteristics, qualities, and geographic origin of these body-contouring services and the Accused Devices.

88.     Defendants' actions constitute a willful violation of 15 U.S.C. § 1125.

89.     Defendants' actions described above have injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

90.     BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

## COUNT V: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114

91.     BTL repeats and re-alleges paragraphs 1–53 as if fully set forth herein.

92.     Defendants use marks identical to BTL's EMSCULPT® and HIFEM® federally registered trademarks.

93.     BTL has not authorized Defendants' use of the BTL Trademarks to advertise and promote body-contouring services using the Accused Devices.

94.     Defendants' unauthorized use of the BTL Trademarks is likely to (a) cause the public and consumers to believe that Defendants' body-contouring services using the Accused Devices are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefiting from the reputation of BTL and the BTL Trademarks to the substantial and irreparable injury of consumers, BTL, the BTL Trademarks, and the substantial goodwill represented thereby.

95.     Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with the BTL Trademarks.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

96.     BTL repeats and re-alleges paragraphs 1–53 as if fully set forth herein.

97.     This claim arises under the common law of the State of Texas.

98.     Defendants have engaged in unfair competition through their reliance and exploitation of consumer mistake and confusion, and its deliberate efforts to exploit the goodwill represented by the BTL Trademarks in connection with the marketing and sale of body-contouring services using the Accused Device(s).

99.     Defendants' aforementioned acts constitute trademark infringement and unfair competition in violation of Texas common law.

100.    As a proximate result of Defendants' actions, BTL has suffered and will continue to suffer damages.

101.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

102.    By reason of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and Defendants' profits attributable to their infringement, which are presently indeterminate, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.      A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)–(c);

B.      An award of damages not less than $125,000 for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.      A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

D.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the "HIFEM" mark, as alleged in this Complaint, infringes BTL's HIFEM® trademark;

H.      A judgment that Defendants' use of the "EMSCULPT" mark, as alleged in this Complaint, infringes BTL's EMSCULPT® trademarks;

I.      A judgment that Defendants' use of the "EM-CON" mark, as alleged in this Complaint, infringes BTL's EM® trademarks;

J.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

K.      A judgment that Defendants have violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46 *et seq.*;

L.      A judgment that Defendants have violated Texas common law;

M.      An award of damages for Defendants' infringement of the BTL Trademarks,

43

including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

N.    A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

O.    A judgment that Defendants' conduct in violating the BTL Trademarks is willful and malicious;

P.    Alternatively, an award of statutory damages for Defendants' infringement of the BTL Trademarks in an amount of $200,000 per counterfeit mark. That amount to be heightened to $2,000,000 per counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2) for Defendants' willfulness;

Q.    An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

R.    An award of any and all of Defendants' profits arising from the foregoing acts;

S.    An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

T.    Permanent injunctive relief enjoining Defendants from:

    i.    using the BTL Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

    ii.    passing off, inducing, or enabling others to sell or pass off any good or service

as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

iii.    committing any acts calculated to cause consumers to believe that Defendants' goods or services are those sold under the authorization, control or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

iv.    further infringing the BTL Trademarks and damaging BTL's goodwill.

U.    An award of BTL's costs and expenses in this action; and

V.    For such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

BTL hereby demands a trial by jury on all issues so triable.

Dated: June 12, 2025                    Respectfully submitted,

                                        /s/ Ryan D. Levy
                                        Ryan D. Levy (TN BPR #024568)
                                        Patterson Intellectual Property Law, P.C.
                                        1600 Division Street, Suite 500
                                        Nashville, TN 37203
                                        Telephone: (615) 242-2400
                                        Facsimile: (615) 242-2221
                                        rdl@iplawgroup.com

                                        *Attorney for Plaintiff BTL Industries, Inc.*